NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted May 3, 2007[*]
Decided May 11, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 07-1039

| | |
|---|---|
| DANIEL AGUILAR, *Petitioner-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 05-C-1269 |
| JEFFREY ENDICOTT, *Respondent-Appellee.*[**] | Lynn Adelman, *Judge* |

---

[*]

After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

[**]

Petitioner Aguilar was transferred to the Redgranite Correctional Institution after this appeal was filed. Although the state did not comply with Fed. R. App. P. 23 or Cir. R. 43, we have noted the change in custody and substituted Jeffrey Endicott, the warden at Redgranite, as the respondent.

**O R D E R**

After finding Wisconsin inmate Daniel Aguilar guilty of battery and possession of a weapon, a prison disciplinary committee revoked 180 days' good-time credit and imposed 360 days in segregation. Aguilar petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254. He claimed that the Wisconsin Department of Corrections lacked authority to discipline him because the misconduct occurred at a contract facility in another state, and that he was denied due process at his disciplinary hearing. The district court denied Aguilar's petition, and we affirm.

For our purposes, we accept as true the factual findings of the Wisconsin courts. *See* 28 U.S.C. § 2254(e)(1). In July 2003, Aguilar was involved in a fight at the privately run prison in Oklahoma where he was serving his Wisconsin sentence. The next day, Aguilar was transferred to the Stanley Correctional Institution (SCI) in Wisconsin, and the Oklahoma facility subsequently sent an incident report to officials at SCI detailing Aguilar's fight. SCI staff then searched Aguilar's cell and found two letters in which he describes the incident in Oklahoma as a "blood bath," and laments that he failed to cause "permanent damage." SCI staff issued a conduct report about the fight, stating that Aguilar had attacked another prisoner with a padlock wrapped in a white cloth. The conduct report charged Aguilar with battery and weapon possession, and listed the incident report from Oklahoma and the letters found in his cell as evidence. Officials at SCI notified Aguilar of the date of his disciplinary hearing and sent him a copy of the conduct report 11 days prior to that hearing. The disciplinary committee found Aguilar guilty of the charges. After exhausting his state-court remedies, he turned to federal court.

On appeal Aguilar presses the same claims he raised in the district court. First, he argues that the Wisconsin Department of Corrections lacked "jurisdiction" to sanction him for conduct that occurred in the Oklahoma facility. But we have explained that principles of comity, federalism, and judicial efficiency preclude the federal courts from reaching the merits on collateral review when the claim was presented to the state courts and decided on the basis of independent and adequate state-law procedural grounds. *Garth v. Davis*, 470 F.3d 702, 714 (7th Cir. 2006). Here, the Wisconsin Court of Appeals determined that under state law the Wisconsin Department of Corrections had the authority to decide how to discipline Aguilar for the Oklahoma incident because the Oklahoma facility had not disciplined him first. *State ex rel. Aguilar v. Frank*, No. 2004AP2865 (Wis. Ct. App. July 28, 2005); *see* WIS. ADMIN. CODE § 303.01(1); *see also Blango v. Thornburgh*, 942 F.2d 1487, 1491 (10th Cir. 1991) (noting that state did not waive jurisdiction over habeas petitioner by transferring him to another facility). Wisconsin did not lose jurisdiction over Aguilar simply because he crossed state lines; his discipline was governed by Wisconsin state law so long as he continued to serve his Wisconsin prison sentence. Thus, Aguilar's first argument presents no issue of federal law that would qualify him for relief under § 2254.

Aguilar next contends that the state court's resolution of his due process claim runs afoul of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Aguilar had alleged that he was not given sufficient notice of his disciplinary hearing, did not have the opportunity to present live witnesses, was found guilty without sufficient evidence, and did not receive adequate assistance from his lay advocate. The Wisconsin Court of Appeals rejected each contention; that court held that Aguilar received timely notice of the charges in writing, was properly limited to written statements instead of live testimony because his relevant witnesses were unavailable, and received a written explanation for the discipline that is supported by the Oklahoma incident report, two witness statements, and the two letters in which Aguilar admits his culpability. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 564, 570-71 (1974); *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985).

We cannot say that the state court unreasonably applied *Wolff* and *Hill*, which govern Aguilar's due process claim. The Supreme Court held in *Wolff* that an inmate must be given written notice of disciplinary charges at least 24 hours in advance, 418 U.S. at 564, and Aguilar received 11 days' notice. The Court also held that an inmate should be allowed to call live witnesses if they can provide relevant testimony without jeopardizing the institution's safety or correctional goals. *Id*. at 566. But as the state court found, the proposed witnesses who could testify about the fight were no longer employed by the Oklahoma facility (it had closed), and Aguilar wanted to call three other witnesses simply to elicit testimony about rules and regulations having nothing to do with the charges. Moreover, the state court appropriately analyzed the strength of the evidence under the "some evidence" standard of *Hill*, 472 U.S. at 455. Finally, the Wisconsin Court of Appeals recognized that *Wolff* holds that an inmate is not entitled to any assistance at disciplinary proceedings if he is literate and the case is not complex. *See Wolff,* 418 U.S. at 569-70*; see also Baxter v. Paligiano*, 425 U.S. 308, 315 (1976) (holding that prisoners do not have a constitutional right to counsel at disciplinary hearings); *Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) (same). The state court applied *Wolff* and concluded that, because Aguilar is literate and his case was straightforward, his advocate's help during the proceedings—no matter how inadequate Aguilar thought it to be—was more than the Constitution required. This application of *Wolff* was not unreasonable.

AFFIRMED.